IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:23-cr-062-RCY |
| DAI'QUAN JARRVEL LANE, | |
| Defendant. | |

**GOVERNMENT'S SENTENCING POSITION**

Dai'Quan Jarrvel Lane is a convicted felon and has been since 2021. His felony status precludes him from possessing firearms and ammunition. But this is of no consequence to Lane, who possessed—and intended to sell—a loaded machinegun in February 2023.

Now, Lane stands guilty of two firearm violations. Taking into consideration the § 3553(a) factors, the United States recommends a 27-month sentence followed by a three-year term of supervised release. Such a sentence would be "sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

I.  **Facts and Procedural History**

In February 2023, Richmond Police Department's (RPD) Officer Railey was reviewing Instagram (IG) account "ighateskee23," an account known by RPD to be associated with Lane. PSR ¶ 3. On or about February 1, 2023, Officer Railey observed the user of the "ighateskee23" account go "Live." *Id*. During the live stream, Lane, who had been convicted of felony perjury in 2021, brandished a firearm multiple times. *Id*. and PSR ¶ 4.

RPD officers went to Whitcomb looking for Lane approximately ten minutes after the Live video ended. PSR ¶ 5. At Whitcomb, officers saw Lane and recognized him to be wearing

1

the same clothing as in the Live video. *Id*. When RPD attempted to stop Lane, he took off running. Officers ultimately caught up to Lane and placed him under arrest. *Id*.

RPD searched the area where Lane fled. On Lane's path of flight, on the side of a fence, officers found a privately made firearm ("PMF") with a suspected machinegun conversion device (a "switch") installed on the back of the firearm's slide, in lieu of a backplate. PSR ¶ 6. The PMF also had a 30-round extended magazine that was loaded with 20 rounds of ammunition. *Id*. The PMF did not feature any exterior serial numbers.

The PMF recovered by RPD officers was the same style of firearm—a handgun with a gray grip, black side, and a switch affixed to the slide—as Lane had posted to his Instagram account a few days prior. But the PMF recovered by RPD officers was notably different than the firearm Lane brandished in the Live video from less than half an hour earlier:



*Lane brandishing a handgun with a silver slide*
*in his February 1, 2023, Instagram Live.*

2



*The PMF recovered February 1, 2023, with a black slide (left) and a screenshot from Lane's Instagram showing a gray handgun with a black slide (right).*

In a post-*Miranda* interview, Lane admitted that he is a convicted felon. PSR ¶ 7. Lane initially denied knowledge of the PMF, but ultimately came clean, admitting he had found it months prior. *Id*. Lane told officers he had lent the PMF to an individual who returned it with the machinegun conversion device installed. *Id*. He also admitted he knew the machinegun conversion device made the PMF fire fully automatic, and that he had been on his way to sell the newly converted machinegun for approximately $750 before RPD arrested him. *Id*.

## II. Sentencing Guidelines Calculation and Relevant 3553(a) Factors

### A. The Sentencing Guidelines Range

Although advisory, the Sentencing Guidelines remain an important factor under section 3553(a) in fashioning an appropriate sentence. As noted in *United States v. Rita*, 551 U.S. 338, 345 (2007), "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough

3

approximation of sentences that might achieve § 3553(a)'s objectives." "[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *Id.* (*quoting United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)). In making this determination:

> a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (*quoting* 18 U.S.C. § 3553(a)).

Lane pleaded guilty to counts one and two of the Indictment pursuant to a written plea agreement. PSR ¶ 3. The United States Probation Office calculated Lane's criminal history category to be I and the applicable offense level to be 17. PSR ¶¶ 67 and 68. The United States concurs with the calculation of the guidelines in the PSR, resulting in a sentencing guideline range of 24 to 30 months. *Id.*

  B. **Nature and Circumstances of the Offense**

Lane stands convicted of two firearms violations: 18 U.S.C. § 922(g)(1) (possession of ammunition by a convicted felon) and 18 U.S.C. § 922(o) (possession of a machinegun). Either charge, standing on its own, is serious. Taken together, and with the specific circumstances of this case, these violations are more serious than most.

First: § 922(g)(1) is not merely a status offense. Its ultimate aim is to keep our

communities safe. Lane demonstrated that he could not abide by the law when he forged his brother's name before the magistrate in 2021. PSR ¶ 29. He knew he couldn't possess a firearm, but he did so regardless, and apparently on more than one occasion. In this case, Lane possessed the loaded PMF with the switch when officers apprehended him and what appeared to be a *different* gun only a short time earlier on Instagram Live. And a review of Lane's music videos—publicly available on YouTube and posted after he was convicted of a felony—show multiple instances of him with firearms[1] and around others with firearms:


*Lane (center) in a music video posted on December 24, 2022.*


*Lane (right) in a music video posted on January 18, 2023.*

---

[1] The Government recognizes that a "disclaimer" shown before these music videos claims that the firearms used are fake but disagrees.

Second: any gun converted into a machinegun poses a danger. Even more so if that gun can fire an increased number of bullets. For example, a standard Glock 23 magazine holds 13 rounds. *See* GunMag Warehouse, https://gunmagwarehouse.com/glock-gen-4-glock-23-40-s-w-13-round-factory-magazine.html (last accessed on January 10, 2024). A Glock 23 converted to a machinegun can therefore spray 13 bullets in a quick burst. Here, Lane possessed a machinegun with a 30-round extended magazine loaded with twenty rounds, increasing the PMF's lethality. PSR ¶ 6. Moreover, Lane admitted he was on his way to sell the loaded machinegun. PSR ¶ 7.

On these facts, the nature and circumstances of this case are serious and demand that Lane be held accountable. A 27-month sentence will adequately serve that purpose.

      C.      **History and Characteristics of Lane**

Lane's criminal history is not lengthy. But the character of his offenses demonstrates a lack of respect for the justice system. Lane has several misdemeanors and one felony conviction, in February 2021, for perjury. PSR ¶ 29. This arises from an incident in September 2020 when Lane was arrested in connection with an investigation of possible larceny from vehicles. PSR ¶ 27. When officers questioned Lane, he gave his brother's name, resulting in a misdemeanor. *Id*. Then, when he appeared before the magistrate, Lane signed the same false name on court papers, resulting in a felony perjury conviction. PSR ¶ 29.

Despite receiving a lenient non-custodial sentence, Lane's adjustment to supervision was poor. For over two months, probation was unable to contact either Lane or his aunt, whom he purported to be living with. PSR ¶ 27. And, while still on probation, Lane possessed the loaded machinegun that is the subject of his appearance before this Court. PSR ¶ 38.

The Government acknowledges that Lane describes a difficult upbringing in the presentence report, including drug and alcohol use in his childhood home (PSR ¶ 44), his father's incarceration (PSR ¶ 45), and prevalent violence in his Whitcomb Court neighborhood (PSR ¶ 43). But Lane's behavior to this point—including lying to a law enforcement officer, misleading the court, failing to adjust to supervision, and then picking up a new felony charge while on probation—weighs in favor of a 27-month custodial sentence.

### D. Seriousness of the Offense, Adequate Deterrence, and Protecting the Public

The seriousness of Lane's offense justifies a top-of-the-guidelines sentence. The use of machineguns is on the rise, with devastating consequences. In April 2022, more than 100 shell casings were recovered at the scene of a shooting that left six people dead. *See* Tom Jackman, *With 'conversion switch devices', machine guns return to U.S. streets*, Washington Post, December 26, 2023, https://www.washingtonpost.com/dc-md-va/2023/12/06/with-conversion-switch-devices-machine-guns-return-us-streets/. A handgun used in that shooting was stolen and converted into a machinegun. *Id*. In August 2022, after being shot at by another vehicle, a drug dealer in D.C. returned fire with a cascade of over twenty bullets at once. *Id*. Considering this sampling of real-world consequences, the seriousness of Lane's offense should not be downplayed simply because the possession of switches is becoming more common.

A 27-month sentence also serves the aim of deterrence for both Lane and those similarly situated. According to a recent study by the United States Sentencing Commission, firearms offenders recidivate at significantly higher rates than offenders convicted of non-firearm offenses. *See* United States Sentencing Commission, Recidivism Among Federal Firearms Offenders, June 2019, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190627_Recidivism_Firearms.pdf. Over two-thirds of

7

firearms offenders were re-arrested for a new crime within eight years of release. *Id*. at 2, 17-19. While Lane's criminal history is not lengthy, his apparently easy access to firearms and disregard for court orders should heighten this Court's concern for recidivism. A sentence towards the top of Lane's anticipated guidelines sends the clear message that illegally possessing a loaded machinegun is not a trivial misstep and is taken seriously by the Court.

Finally, a loaded firearm in the hands of a convicted felon always poses a risk. It poses even more of a risk when it is an untraceable "ghost gun[2]" outfitted with an extended magazine and capable of firing fully automatic. PSR ¶ 14. A 27-month custodial sentence will protect the public.

    **E.    Providing Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

Lane is the only person who can control what his future looks like. But the Court can decrease the likelihood of Lane committing further crimes by encouraging him to take advantage of resources available during his incarceration.

According to the PSR, Lane has not completed his high school education or obtained a GED certificate. PSR ¶ 59. Lane may benefit from participation in the Bureau of Prisons Literacy Program, which is designed to prepare inmates to get their GED credential. *See* Directory of National Programs, September 2017, at page 4, https://www.bop.gov/inmates/custody_and_care/docs/20170914_BOP_National_Program_Catalog.pdf.

Lane also reports a history of substance abuse, including the daily use of street-purchased

---

[2] "PMFs are commonly referred to as 'ghost guns' because it can be difficult to track them. Investigating crimes involving unserialized PMFs can create difficulty in tracing the origins of the firearm and linking them to related crimes." *See* Privately Made Firearms, ATF, https://www.atf.gov/firearms/privately-made-firearms (last accessed on January 10, 2024).

Percocet up until his arrest in May 2023. PSR ¶ 58. BOP offers a number of programs that are aimed at substance abuse and mental health treatment. One of those programs is the Drug Abuse Education program, which encourages participants to examine their drug use and how it impacts their choices. *See* Directory of National Programs, September 2017, at page 12, https://www.bop.gov/inmates/custody_and_care/docs/20170914_BOP_National_Program_Catalog.pdf.

Lane reports some employment, but it is sporadic. PSR ¶ 60-64. His most consistent employment seems to be his rap performances. PSR ¶ 61. The Government doesn't discount Lane's musical endeavors. But the music industry is a business like any other, and vocational courses in business may benefit Lane's efforts—though, most of these courses require GED proficiency. *See* Inmate Occupational Training Directory, March 2017, https://www.bop.gov/inmates/custody_and_care/docs/inmate_occupational_training_directory.pdf.

Each of these programs would help to stabilize and rehabilitate Lane and decrease his likelihood of recidivism. A sentence of 27-months will allow Lane to take advantage of these programs.

### III. Conclusion

The United States recommends a sentence of 27 months of incarceration followed by a three-year term of supervised release.

                                                Respectfully submitted,

                                                JESSICA D. ABER
                                                UNITED STATES ATTORNEY

By:        /s/
            Devon E. Schulz
            Michigan Bar No. P80959
            Special Assistant United States Attorney
            Eastern District of Virginia
            919 East Main Street, Suite 1900
            Richmond, VA 23219
            Phone: (804) 819-5400
            Fax: (804) 771-2316
            Email: devon.schulz@usdoj.gov